UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAZMINE JUAREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 7705 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

After Plaintiff Jazmine Juarez incurred consumer credit card debt, Defendant Experian Information Solutions, Inc. ("Experian") reported information about the debt in credit reports it compiled and distributed. Juarez claims that this information is inaccurate, and she filed suit against Experian under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Experian answered Juarez's complaint and now moves for judgment on the pleadings. Because the information reported by Experian is not factually inaccurate, Juarez cannot proceed on her FCRA claims against Experian. The Court therefore grants Experian's motion for judgment on the pleadings [20].

### BACKGROUND[1]

Juarez incurred debt for a Citibank N.A. consumer credit card ("the Debt") that was later obtained (purportedly) by Midland Funding, LLC and Midland Credit Management Inc.

---

[1] The Court derives the background facts from Juarez's complaint, the exhibits attached to the complaint, and Experian's answer. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998). In doing so, the Court has not considered legal conclusions, "sheer speculation, bald assertions, [or] unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020); *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). Moreover, if an exhibit contradicts allegations in the complaint, "the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 454.

("Midland").[2] In February 2017, Midland sued Juarez in Illinois state court to collect payment on the Debt (the "state court action"). In the state court action, Midland produced a notarized affidavit from an employee averring that Midland had purchased the Debt from Citibank in May 2016. However, Midland did not provide a purchase agreement for the Debt. Disputing the Debt, Juarez litigated the state court action, and she ultimately sought to arbitrate the dispute. Arbitration was set for October 30, 2017, but four days before the scheduled arbitration, Midland dismissed the state court action without prejudice.[3]

Despite dismissing the state court action, Midland continued to furnish information regarding the Debt to each of the major credit bureaus. On December 7, 2017, Juarez's counsel sent a letter to Experian, which is a consumer reporting agency ("CRA") that "assembles and/or evaluates consumer credit information" for use in credit reports. Doc. 1 ¶ 5. In the December 7 letter, Juarez's counsel asserted that Experian was reporting inaccurate information regarding Juarez and requested that Experian remove the Midland tradeline from her credit report. According to the letter, Juarez had "long disputed owing any debt" to Midland, and Juarez's counsel claimed that Midland had dismissed the state court action because it "was unable to prove that Ms. Juarez owes any money at all." Doc. 1-1 at 2. Juarez's counsel sent a number of documents with the letter, including Midland's complaint in the state court action, the aforementioned affidavit regarding Midland's ownership of the Debt, the order dismissing the state court action, and the Midland tradeline.

---

[2] Midland Funding is a debt purchaser, and Midland Credit Management "is an affiliate of Midland Funding that services Midland Funding's consumer debt accounts." *Madden v. Midland Funding, LLC*, 786 F.3d 246, 248 (2d Cir. 2015). The parties do not distinguish between the two Midland entities in their briefing, and any distinction between the entities is irrelevant to the Court's resolution of Experian's motion. Therefore, the Court uses "Midland" to refer to one or both of these Midland entities.

[3] Juarez also alleges that Midland dismissed the state court action "[r]ather than lose at arbitration for lack of evidence." Doc. 1 ¶ 15. This is speculation that the Court does not consider. *See Taha*, 947 F.3d at 469.

Experian received the December 7 letter and accompanying documentation on December 11, 2017. Juarez alleges, upon information and belief, that within five days of receiving Juarez's correspondence, Experian notified Midland of Juarez's dispute and the nature of the dispute. Experian, in turn, admits that it sent an Automated Consumer Dispute Verification ("ACDV") and a copy of Juarez's dispute to Midland. Juarez also alleges upon information and belief that Experian updated its reporting of the Debt based solely upon information provided by Midland in response to Experian's notification. Ultimately, though, Experian did not remove the Midland tradeline from Juarez's credit report, and it continued to report the Midland tradeline on Juarez's credit report as recently as November 2019.

Juarez alleges that Experian violated 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a) by failing to (1) "conduct a proper and reasonable reinvestigation concerning the inaccurate information in [her] credit report after receiving notice of the dispute from" Juarez; (2) "provide all relevant information provided by [Juarez] regarding the dispute of the inaccurate information" to Midland; (3) "consider all relevant information submitted by" Juarez about the dispute; (4) "delete the inaccurate information from [Juarez's] credit file after reinvestigation" or "note the disputed status of the inaccurate information"; and (5) "employ and follow reasonable procedures to assure maximum possible accuracy of [Juarez's] credit report, information and file[.]" Doc. 1 ¶¶ 36, 40, 42, 44, 46, 48. The inaccurate information reported by Experian about Juarez reflects negatively upon Juarez, her credit application history, her financial responsibility as a debtor, and her credit worthiness.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the parties have filed the complaint and answer. Fed. R. Civ. P. 12(c); *Buchanan-*

*Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A motion under Rule 12(c) "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams*, 742 F.3d at 727–28. Thus, "[t]o survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face.'" *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (quoting *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018)). When assessing the facial plausibility of a claim, the Court takes "all well-pleaded allegations as true" and draws "all reasonable inferences and facts in favor of the non-movant." *Bishop*, 900 F.3d at 397 (citation omitted); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). At the same time, the Court need not accept legal assertions, "sheer speculation, bald assertions, [or] unsupported conclusory statements," nor must the Court "ignore facts set forth in the complaint that undermine the plaintiff's claim." *Taha*, 947 F.3d at 469; *Bishop*, 900 F.3d at 397 (citation omitted); *Buchanan-Moore*, 570 F.3d at 827. In ruling on a Rule 12(c) motion, the Court considers the pleadings, which include the complaint, answer, and documents attached as exhibits to the complaint and answer; "documents incorporated by reference to the pleadings"; and matters that are properly subject to judicial notice. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (citation omitted); *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

## ANALYSIS

Juarez alleges that Experian violated § 1681e(b) and § 1681i(a)(1), (a)(2), (a)(4), and (a)(5) of the FCRA.[4] Under § 1681e(b), whenever a CRA prepares a credit report, "it shall

---

[4] Juarez did not identify 15 U.S.C. § 1681i(c) in her complaint, but her allegation that Experian "failed to note the disputed status of the inaccurate information," Doc. 1 ¶ 36, could be seen as invoking this subsection as a statutory basis for her claims. *See* 15 U.S.C. § 1681i(c) ("Whenever a statement of a dispute is filed, . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."). As Experian points out,

follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i(a) covers "[r]einvestigations of" information disputed by a consumer. *Id.* § 1681i(a). Relevant here, § 1681i(a) addresses the requirements of the reinvestigation (subsection (a)(1)), notice of the dispute from the CRA to the furnisher of the information (subsection (a)(2)),[5] "[c]onsideration of consumer information" (subsection (a)(4)), and "[t]reatment of inaccurate or unverifiable information" (subsection (a)(5)). *Id.*

To state a claim under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i(a), a plaintiff must sufficiently allege that the defendant's credit report contains inaccurate information. *Denan*, 959 F.3d at 297–98; *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019); *Handrock v. Ocwen Loan Servicing, LLC*, 216 F. Supp. 3d 869, 873 (N.D. Ill. 2016). The information, however, must be factually inaccurate; an alleged legal inaccuracy is not sufficient. *See Denan*, 959 F.3d at 294–96; *Humphrey*, 759 F. App'x at 488. "Factually inaccurate information includes inaccurate amounts, tradeline items not immediately removed once vacated, and inaccurately updated loan terms[,]" whereas "legal inaccuracies include the validity of debt or a dispute regarding to whom the debt was assigned." *Rodas v. Experian Info. Sols., Inc.*, No. 19-CV-07706, 2020 WL 4226669, at *2 (N.D. Ill. July 23, 2020) (citations omitted).

---

however, a claim under § 1681i(c) requires the plaintiff to file a statement of dispute upon completion of the CRA's reinvestigation. 15 U.S.C. § 1681i(b), (c); *Lancaster v. Trans Union, LLC*, No. 09 C 1698, 2010 WL 4625345, at *5 (N.D. Ill. Nov. 4, 2010); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 844 (N.D. Ill. 2005); *Moline v. Experian Info. Sols., Inc.*, 289 F. Supp. 2d 956, 959 (N.D. Ill. 2003). Juarez's complaint does not allege that she filed the required statement of dispute after Experian's reinvestigation. Juarez also did not respond to Experian's § 1681i(c) arguments; indeed, she does not even argue that she is pursuing a claim under that statutory subsection. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Thus, the Court does not consider any claim under § 1681i(c).

[5] A "furnisher" is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." *Denan*, 959 F.3d at 294 n.2 (quoting 12 C.F.R. § 1022.41(c)). Juarez alleges that Midland is a furnisher.

5

Experian argues that the Court should dismiss Juarez's claims under §§ 1681e(b) and 1681i(a) because she "fails to allege facts showing that there was anything factually inaccurate about the way" Experian reported the Debt and because Juarez's lawsuit inappropriately attempts to use the FCRA "to collaterally attack the validity of" the Debt. Doc. 21 at 6–7. Juarez counters by arguing that she is not disputing the validity of the Debt. Rather, Juarez continues, she is only disputing Midland's ownership of the debt, which is a factual inaccuracy because ownership is a pure question of fact.[6]

The Court agrees that Juarez is not disputing the legality or validity of the Debt. For example, she is not contending that the Debt is void *ab initio* under state usury laws, as was the case in *Denan*, *see* 959 F.3d at 293–95. Instead, Juarez argues only that *Midland* cannot collect from her because it is not the rightful owner of the Debt. This is not a dispute over the legality, validity, or enforceability of the Debt itself, but a dispute over whether a particular party (Midland) owns the Debt and can therefore collect payment on it.

Even so, the Court does not agree with Juarez that whether Midland owns the Debt is a pure question of fact. Courts generally categorize property ownership[7] as a mixed question of law and fact. *See, e.g.*, *St. Louis & S.F. Ry. Co. v. Gill*, 156 U.S. 649, 664 (1895) (characterizing allegations regarding "ownership of property" as "allegations of mixed law and fact"); *PGP,*

---

[6] Juarez's complaint also alleges that the Midland tradeline inaccurately lists "a balance of $4,535, status as a 'collection account,' and several notations of delinquency." Doc. 1 ¶ 25. But Juarez does not rely upon these alleged inaccuracies to oppose Experian's motion, so the Court does not consider whether they constitute factual inaccuracies that support Juarez's FCRA claims. *See Marling v. Littlejohn*, 964 F.3d 667, 669 (7th Cir. 2020) (declining to pursue a potential argument that a party did not make); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." (citations omitted)); *Bonte*, 624 F.3d at 466.

[7] A debt is intangible property. *See Texas v. New Jersey*, 379 U.S. 674, 677 (1965); *Marc Dev., Inc. v. Wolin*, 904 F. Supp. 777, 794 n.9 (N.D. Ill. 1995).

*LLC v. TPII, LLC*, 734 F. App'x 330, 333 (6th Cir. 2018) ("[O]wnership of a trademark is a *mixed* question of law and fact."); *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 111 (2d Cir. 2006) ("The question of who owns a given item of personal property is a mixed question of law and fact."); *Kahn v. Gen. Motors Corp.*, 77 F.3d 457, 459 (Fed. Cir. 1996) ("The ownership of patent property is a matter of law, the decision of which may entail underlying factual inquiries."); *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985) ("A determination of [copyright] ownership is a conclusion of law based on underlying facts."); *Chi. Title & Tr. Co. v. Ward*, 332 Ill. 126, 130–31 (1928) ("[O]wnership is a mixed question of law and fact. It involves the question of what was done in passing title or ownership, and the legal effect attached to what was done."); *Highsmith v. Dep't of Pub. Aid*, 345 Ill. App. 3d 774, 778 (2004) ("[O]wnership of a joint account is not a purely factual question but, rather, involves consideration of historical facts within a framework of legal principles."). In fact, another court in this District recently rejected the same argument Juarez makes here, finding that ownership of the plaintiff's debt "is a mixed question of law and fact[.]" *Chuluunbat v. Cavalry Portfolio Servs., LLC*, No. 20 C 164, 2020 WL 4208106, at *3 (N.D. Ill. July 22, 2020).

To support her contention, Juarez relies upon *In re Meyer*, in which the Seventh Circuit stated that "[t]he question of ownership is a pure question of fact." 151 F.3d 1033 (Table), 1998 WL 538160, at *4 (7th Cir. Aug. 21, 1998). But *In re Meyer* did not address the matter at issue here, i.e., whether a dispute over the ownership of a debt is a factual inaccuracy upon which a plaintiff can base claims under § 1681e(b) or § 1681i(a).[8] *See also Chuluunbat*, 2020 WL 4208106, at *3 (rejecting the plaintiff's reliance on *In re Meyer* for the same argument because

---

[8] *In re Meyer* is also an unpublished, nonprecedential order that parties generally should not cite. *See* 7th Cir. R. 32.1(d) ("No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion (res judicata or collateral estoppel) or to establish the law of the case from an earlier appeal in the same proceeding.").

*In re Meyer* "involved ownership of a corporation, not a debt, and the FCRA was not implicated in that case as it involved a tax avoidance scheme that went askew"). Nor does the Court find it persuasive that the parties and the court in two district court cases from Missouri may have assumed that whether the plaintiff incurred the debt at issue was a question of fact that could foreclose summary judgment on an FCRA claim. *See* Doc. 35 at 8–9 (citing *Campbell v. Experian Info. Sols., Inc.*, No. 08-4217-CV-C-NKL, 2009 WL 3834125 (W.D. Mo. Nov. 13, 2009); *Murphy v. Midland Credit Mgmt., Inc.*, 456 F. Supp. 2d 1082 (E.D. Mo. 2006)). The defendants in *Campbell* and *Murphy* did not argue that the debtor's misidentification was a legal inaccuracy not governed by § 1681e(b) or § 1681i(a), *see Campbell*, 2009 WL 3834125, at *1, *3–8; *Murphy*, 456 F. Supp. 2d at 1088–89, so there was no reason for the courts in those cases to consider that argument, *see United States v. Sineneng-Smith*, 590 U.S. ----, 140 S. Ct. 1575, 1579 (2020); *Wells v. Caudill*, --- F.3d ----, 2020 WL 4198135, at *3 (7th Cir. July 22, 2020) (the fact that a court resolved an issue using the parties' assumption "does not turn [that] assumption into a holding"); *see also Pinno v. Wachtendorf*, 845 F.3d 328, 331 (7th Cir. 2017) ("[J]udicial opinions must be interpreted in context.").

In any event, determining what constitutes "factually" as opposed to "legally" inaccurate information for purposes of § 1681e(b) and § 1681i(a) does not involve simply looking to whether courts characterize the dispute as a question of fact or a question of law in the context of litigation. Rather, the Court must look to whether Experian "could have uncovered the inaccuracy if it had reasonably" investigated the issue. *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (citation omitted) (internal quotation marks omitted); *Denan*, 959 F.3d at 296, 298 (finding no factual inaccuracies where "no reasonable procedures could have uncovered an inaccuracy in plaintiffs' credit reports"). In conducting this inquiry, courts

8

consider whether a CRA is obligated or qualified to resolve the dispute at hand. *See, e.g.*, *Denan*, 959 F.3d at 295 (explaining that the FCRA and its regulations do not impose a duty on CRAs to provide accurate information about liability or "determine the legality of a disputed debt"); *id.* at 295, 297 (finding that the power to resolve certain legal issues were for a court only and "exceed[ed] the competencies of consumer reporting agencies"); *Humphrey*, 759 F. App'x at 488 (finding that the plaintiff did not allege a factual inaccuracy where the question of whether he "was entitled to a suspension of collections was a legal question beyond the scope of a reasonable reinvestigation" by a CRA); *DeAndrade*, 523 F.3d at 68 (finding that "a legal issue that a credit agency . . . [was] neither qualified nor obligated to resolve under the FCRA" did not constitute "a factual inaccuracy that could have been uncovered by a reasonable reinvestigation").

      Here, a reasonable investigation by Experian could not have revealed that Midland did not own the Debt. Midland's dismissal of the state court action against Juarez without prejudice did not constitute a final decision on the merits as to the Debt's ownership, *Doherty v. FDIC*, 932 F.3d 978, 982 (7th Cir. 2019), and Juarez does not identify any other court ruling or decision holding that Midland does not own the Debt. Instead, Juarez alleges that Midland lacks sufficient evidence to prove its ownership of the Debt.[9] *See, e.g.*, Doc. 1 ¶¶ 11, 14 ("Midland failed to provide sufficient evidence [in the state court action] to prove it owned any debt alleged[ly] owed by [Juarez] when it filed its lawsuit. . . . Midland had no purchase agreement

---

[9] In responding to Experian's motion, Juarez inaccurately asserts that "Midland failed to produce evidence that it owned the" Debt and that Midland's claim of ownership is "unsubstantiated." Doc. 35 at 2, 5, 10. The affidavit provided by Midland in the state court action, which Juarez provided to Experian and attached to her complaint, provides evidence that supports Midland's claim of ownership. *See Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 745 (2011) ("Affidavits are a substitute for testimony taken in open court[.]" (citations omitted) (internal quotation marks omitted)). Juarez may dispute the veracity of this affidavit or its significance, but it is nonetheless evidence provided by Midland to substantiate its ownership claim.

for this alleged debt."). Yet Experian is not qualified to determine what evidence is necessary to establish Midland's ownership of the Debt. A court must decide that issue by interpreting applicable state law. *See United States v. Mitchell*, 403 U.S. 190, 197 (1971) ("In the determination of ownership, state law controls."); *United States v. Henricks*, 886 F.3d 618, 626 (7th Cir. 2018) ("State law is employed to ascertain who owned what property[.]"); *Chi. Title & Tr. Co.*, 332 Ill. at 130–31 (ownership "involves the question of what was done in passing title or ownership, and the legal effect attached to what was done"); *cf. Denan*, 959 F.3d at 295, 297 (noting that only a court could determine whether different states' laws rendered the loans at issue void). Whether Midland has sufficient evidence to demonstrate that it owns the Debt under applicable state law is precisely the type of decision for a court to make in a lawsuit between Midland and Juarez; it is not a decision that Experian was obligated to make. *See Denan*, 959 F.3d at 296–97; *DeAndrade*, 523 F.3d at 68.

*Rodas* and *Chuluunbat*, two recent decisions from this District, provide further support for the Court's conclusion. Like Juarez, the plaintiffs in both *Rodas* and *Chuluunbat* disputed that a particular company owned their debts, and they sued CRAs under the FCRA for inaccurately reporting that their debts were owned by those companies. *Rodas*, 2020 WL 4226669, at *1–2; *Chuluunbat*, 2020 WL 4208106, at *1, *3. In response to Rule 12 motions (a Rule 12(c) motion in *Rodas* and a Rule 12(b)(6) motion in *Chuluunbat*), the plaintiffs argued, like Juarez again, that a dispute over who owns their debts is a pure question of fact and, therefore, a factual inaccuracy that the CRAs could have uncovered. *Rodas*, No. 19-CV-07706, Doc. 46 at 2, 10–11; *Chuluunbat*, 2020 WL 4208106, at *3. The *Rodas* and *Chuluunbat* courts rejected this argument and dismissed the plaintiffs' claims against the CRAs. *Rodas*, 2020 WL 4226669, at *2; *Chuluunbat*, 2020 WL 4208106, at *3. In *Rodas*, the court explained that the

plaintiff's contention that a company did not own the debt "is a potential legal inaccuracy, not a factual one," and that the plaintiff could not dispute this legal issue "as a factual inaccuracy with" the CRA "[u]ntil a tribunal decides" it. 2020 WL 4226669, at *2. Similarly, the court in *Chuluunbat* reasoned that because ownership of the debt at issue "is a mixed question of law and fact, any inaccuracy relating to the [d]ebt's ownership is a legal inaccuracy and not a factual one." 2020 WL 4208106, at *3.

As in *Rodas* and *Chuluunbat*, Juarez's contention that Midland does not own the Debt is not a factual inaccuracy that can subject Experian to liability for Juarez's claims. And until a court or other tribunal finds that Midland does not own the Debt, Juarez's claims under § 1681e(b) and § 1681i(a) based on this alleged inaccuracy do "not move from speculative to plausible." *See Denan*, 959 F.3d at 295–96. Therefore, judgment on the pleadings in Experian's favor is appropriate.

## CONCLUSION

For the foregoing reasons, the Court grants Experian's motion for judgment on the pleadings [20]. The Court enters judgment for Experian on Juarez's complaint and terminates this case.

Dated: August 31, 2020

SARA L. ELLIS
United States District Judge